† INHAB'TS OF OLDTOWN *versus* INHAB'TS OF FALMOUTH.

A minor child of parents who are paupers, bound to service by the select-
men, by written indentures, until twenty-one years of age, is not *thereby*
*emancipated.*

Such child follows the settlement of his father, within this State, until he
acquires one of his own.

ON FACTS AGREED.

ASSUMPSIT, for supplies furnished to one Robert Herring-
ton, a pauper, whose settlement is alleged to be in Fal-
mouth.

No question arose as to notice or answer.

The pauper was born in Falmouth in 1802, and his pa-
rents had, at that time, a legal settlement in that town.

On Feb. 12, 1814, the town of Falmouth was divided, and
a portion of it incorporated into the town of Westbrook.

The parents of the pauper never lived in that part of
Falmouth which remained Falmouth after that division.

At the time of the division the mother lived on territory
which became Westbrook, and was then supported as a pau-
per by Falmouth.   The father was absent.

So early as April 25, 1807, the parents of the pauper
were chargeable to Falmouth, and on that day, Robert, the
pauper, was bound by indentures by the selectmen of the
town, until he should reach twenty-one years of age, to one
Merrill, who lived in that part of the town, which, after the
division, remained as Falmouth, and remained there until he
was fourteen years of age, when he ran away.   He loitered
in neighboring places eighteen months, when his father took
and carried him to Vermont, where he remained with him
a short time, and then went to sea, and did not return to
this State for eleven years after.

Upon a division of the paupers, under the Act of 1814,
the mother of Robert, was assigned to Westbrook — her
son George to Falmouth — Robert, the present pauper, was
then living in Falmouth under the indentures.

The Court were authorized to render judgment by nonsuit or default, according to the law of the case.

*Hilliard,* for plaintiffs.

*Kent,* for defendants.

RICE, J.— By the Act of the Legislature of Massachusetts passed February 11, 1794, twelve modes were provided in which a legal settlement might be obtained, two of which only will be noticed.

By the second mode, legitimate children follow and have the settlement of their father, if he have any within the Commonwealth, until they gain a settlement of 'their own; but if he shall have none, they shall in like manner, follow and have the settlement of their mother, if she shall have any.

By the eleventh mode, any minor who shall serve an apprenticeship to any lawful trade, for the space of four years, in any town or district, and actually set up the same therein within one year after the expiration of said term, being then twenty-one years old, and continue to carry on the same for the space of five years therein, shall thereby gain a settlement in such town.

The pauper did not obtain a settlement in his own right, under the eleventh mode, because he did not set up his trade in Falmouth as therein provided, if the business of farming can be called a trade.

At the birth of the pauper, his father and mother had their legal settlement in Falmouth, in that part now Westbrook, and never lived in that part of the town, which, after the division, remained Falmouth.

At the time of the division of the town, the mother of the pauper was supported by the town as a pauper, but his father was absent from the town.

By the Act of separation, among other things it is provided, that all persons who are now absent from said town of Falmouth, and shall hereafter become chargeable as pau-

pers, shall be returned to and maintained by that town in which they obtained their inhabitancy, before their removal.

Under the facts, as they exist in this case, had the father become chargeable, the town of Westbrook would have been liable for his support. Does the settlement of the pauper follow that of his father, under the general law then in force?

When the town was divided the pauper was living with James Merrill, as a servant, under indentures entered into by said Merrill with the overseers of the poor of the town of Falmouth. Merrill lived on territory within the present town of Falmouth.

The fact, that a minor is bound as an apprentice or servant, by the overseers of the poor, does not render such minor a pauper. *Leeds* v. *Freeport*, 10 Maine, 356; *Milo* v. *Harmony*, 18 Maine, 415.

But it is contended that the pauper was emancipated by the act of the overseers of the poor, in binding him to service, and obtained a settlement in his own right, under the Act of division.

The law is well settled, that a minor, who has been emancipated, may acquire a legal settlement in his own right. But we find no case, and none has been cited, in which a minor has been held to have been emancipated, from the fact that he had been indented as a servant or apprentice by the overseers of the poor.

In *Milo* v. *Harmony*, it was held that a minor, who was bound to service, was emancipated; not, however, by the act of binding, but by the death of the parents. Emancipation is, ordinarily, matter of contract, or agreement. When the parents are living, there must be consent proved on their part, or acts from which such consent may be inferred, to constitute emancipation. It is not accomplished by removing the child from the control of the parent, *in invitum*, by the overseers of the poor, though both parent and child may, for the time being, be paupers. The overseers of the poor, may, it is true, bind as apprentices or servants, the

minor children of poor and indigent persons, who are themselves unable to afford them suitable support, and the control of such persons over their children, may thereby be temporarily, or even permanently, suspended. But if the child should be discharged from its indentures, and the parent become of sufficient ability to furnish it support while in its minority, he would at once be reinstated in all the rights of a parent, in as full a manner as if he had never been visited by misfortune.

In the case at bar, the father was poor, and unable to support his wife and children, and they consequently became a charge upon the town. But it does not appear that he ever intended to abandon this child, or consent to his emancipation. On the contrary, after the pauper departed from his master, his father, on his return from Vermont, took charge of him and removed him out of the State, thus distinctly repelling the idea of abandonment or emancipation.

We think the facts, as agreed, show clearly that the pauper has a derivative settlement from his father, and that the settlement of his father was in Westbrook, and not in Falmouth. *Plaintiffs nonsuit.*